# EXHIBIT 3



**M P**
**& Co**   **Mills,**
**Potoczak**
**& Company**

Certified Public Accountants and Business Advisers

27600 Chagrin Boulevard
Suite 200
Cleveland, Ohio 44122-4464
Phone: 216.464.7481
Fax: 216.464.7581
www.mpccpa.com

Mark G. Mills
William M Potoczak

December 30, 2011

Mary Jane Tomiye Rising
REDACTED
West Covina, CA 91797

RE: Beneficiary Designation Letter

Dear Investor:

We have closed the life settlement you invested in through Pacific West Capital Group, Inc. You are now a beneficiary of the PWCG Trust. Your funds have been placed with the following policy:

| | |
|---|---|
| Insurance company: | Mass Mutual Life Insurance Co |
| Policy number: | REDACTED 5490 |
| Investment amount: | $20,000.00 |
| Total funds returned to investor: | $45,000.00 |

A copy of the recorded change of ownership and beneficiary to the PWCG Trust on the Mass Mutual Life Insurance Co policy you have been placed with is attached. If you have any questions, please give me a call.

Very truly,

**MILLS, POTOCZAK & COMPANY**
Trustee of the PWCG Trust

By:   Lorie L. Kaufman
Life Settlement Staff

E:\clients\pwcg\corr\investor letter

Sender's email address: *lkaufman@mpccpa.com*
Sender's direct dial: *216-682-0396*

GOVERNMENT
EXHIBIT Am
47
3.11.14 LAHDHS

**FOIA Confidential Treatment Requested**

PWCG021321

Exhibit 3 Page 49



**PacificWest**
CAPITAL GROUP

Monday, January 09, 2012

Mary Jane Tomive Rising
REDACTED
West Covina, CA 91791-5304

Dear Mary,

On behalf of Pacific West Capital Group, I would like to thank you for your investment in the PWCG Trust, offering safety while still producing a great return.

Please find enclosed your closing documents for the Life Settlement Investment:

Assignment of Death Benefits/ Beneficiary Designations from the trustee
Copy of letter from the Insurance Company to the Trustee noting recorded changes of ownership & beneficiary to the PWCG Trust
Copy of Deposit Receipts from the escrow agent
Copy of  signed Purchase Agreements
Copy of  signed Policy Disclosure Forms

When the policy matures, we will be in contact with you to offer any additional policies available for investment. Also you will be receiving a semi-annual statement that will list additional policies available for potential investment. If you have any questions, please feel free to contact our office so that we may assist you.

We consider referrals the highest compliment. If you know of anyone who may benefit from our services, thank you in advance for your referral.

Sincerely,

Eric Cannon
Pacific West Capital Group

1901 Avenue Of The Stars,  Suite 360 • Los Angeles, CA 90067
800 588-8000 • 310 578-6343 • FAX: 310 578-6443 • www.pwcapital.net

FOIA Confidential Treatment Requested

PWCG021322

Exhibit 3 Page 50



Massachusetts Mutual Life Insurance Company and affiliates
Springfield MA 01111-0001

December 27, 2011

***M231***
PWCG TRUST DTD 11/09/2004
C/O MILLS POTOCZAK & CO TTEE
27600 CHAGRIN BLVD #200
CLEVELAND OH  44122

Dear Trustee:

Re:  Policy Number

REDACTED490

Issuing Company
(referred to herein as "MassMutual")
Massachusetts Mutual Life Insurance Co

At MassMutual, we are dedicated to accurately and promptly meeting the needs of our clients. We are writing to you today to confirm that our records have been updated to reflect that all ownership rights, title, and interest in this policy have been transferred to the PWCG Trust dated November 9, 2004, effective December 20, 2011. The current acting trustee for the trust is Mills, Potoczak and Company. Please be aware that only the current owner may exercise policy rights. We recommend that you file this confirmation with the policy.

**As a result of the ownership change, the beneficiary designation for this policy is:**
Primary:  PWCG Trust dated November 9, 2004

Please note, if this policy was contracted in AK, AR, CT, GA, IN, IA, KY, LA, ME, MI, MN, MS, MT, NE, NJ, TN, TX, VA, or WI, and the policy includes a benefit for accidental death, the additional benefit may not be included as part of the settlement. The accidental death benefit shall remain payable either to the beneficiary last named by the owner before entering into the settlement contract, a designated beneficiary, or the estate of the insured.

*In accordance with the policy, MassMutual and its affiliates reserve the right to contest the validity of this policy for any material misrepresentation of a fact.*

If you have any questions, please contact our Service Center at **1-800-272-2216**. Representatives are available to help you Monday through Friday from 8 a.m. to 8 p.m., Eastern Time. Other contact options include: our website (use the *Contact* link at **www.massmutual.com**) or your financial services representative, Barbara T Meier.

Sincerely,

*Heidi Jarvis*
Heidi Jarvis
Customer Service Representative
Insurance Operations

Enclosure: 1

© 2011 Massachusetts Mutual Life Insurance Company.  All rights reserved. MassMutual Financial Group is a marketing name for Massachusetts Mutual Life Insurance Company (MassMutual) and its affiliated companies and sales representatives.

**FOIA Confidential Treatment Requested**

PWCG021323

Exhibit 3 Page 51

Check

Page 1 of 1



**FOIA Confidential Treatment Requested**

PWCG021324

Exhibit 3 Page 52

Check

Check Image27.4.4.2

| Bus. Date :<br>12/08/2011 | Seq Num :<br>139 | Check :<br>1 | Account Number :<br>REDACTED | Amount :<br>80000.00 | FRB-ABA :<br>122016066 | | Print | Close |

12/08/2011    PWCG Purchase Escrow Account       Tran Id: 3221      Checks: 3

CITY NATIONAL BANK
The way up.

40000.00
20000.00
20000.00

REDACTED

| 1 | 122016066 | 123234235 | 646 | 8000000 |

Camera
⊙ First
   Second

CITY NATIONAL BANK
The way up.

Camera
⊙ First
   Second

FOIA Confidential Treatment Requested

PWCG021325

Exhibit 3 Page 53

# PACIFIC WEST CAPITAL GROUP, INC.

### LIFE SETTLEMENT DISCLOSURE FORM

**SET FORTH BELOW IS INFORMATION REQUIRED BY CALIFORNIA LAW TO BE DISCLOSED TO PURCHASERS OF LIFE SETTLEMENT INTERESTS. ADDITIONAL REQUIRED DISCLOSURES ARE CONTAINED IN THE PURCHASE AGREEMENT THAT YOU HAVE EXECUTED.**

1. **INFORMATION ABOUT THE INSURED**   REDACTED

   The insureds are currently an 85 year old Male (DOB:        /1926) and an 84 year old Female (DOB:      1927).   REDACTED

2. **INFORMATION ABOUT THE INSURANCE COMPANY ISSUING THE POLICY**

   The insurance company that issued the policy that is described below is as follows:

   > Massachusetts Mutual Life Insurance Company
   > ("AA+" as rated by Standard & Poors)
   > 1295 State Street
   > Springfield, MA 01111
   > 1-800-272-2216

3. **INFORMATION ABOUT THE REGULATOR OF THIS INSURANCE COMPANY**

   The state or foreign country regulator of the insurance company that issued the policy is:

   > California Department of Insurance
   > 300 Capitol Mall
   > Suite 1600
   > Sacramento, CA 95814
   > (800) 927-4357

4. **GENERAL INSURANCE POLICY INFORMATION**

   The insurance policy number is    5490   REDACTED
   This policy was originally issued on 8/23/2002
   This policy is a Flexible Premium Adjustable / Universal Life policy.

5. **INSURANCE FACE VALUE, POLICY OWNERSHIP & PURCHASE INFORMATION**

   The total face value of this policy is $ 4,450,000.

   You are purchasing    **1.0**    % of the death benefit payable under this policy.

SELLERS.CA Disclosure Statement
11/3/2011
Page 1 of 3



**FOIA Confidential Treatment Requested**

PWCG021327

Exhibit 3 Page 55

6. **INFORMATION APPLICABLE IF THIS IS A GROUP POLICY**

    X   This policy is not a group policy.
    ☐   This policy is a group policy.  The name, address, and telephone number of the group is
        as follows:

        Name            _____
        Address         _____
                        _____
        Telephone       (         )  _____

    ☐   You should be aware that material terms and conditions govern the conversion of this
        group policy to an individual policy.  This information is as follows:

        Should premiums on this policy increase upon such conversion, the premiums
        due on this policy would increase from $_____ on a(n) _____
        basis to $_____ on a(n) _____ basis upon any such conversion.
        This information is based on current conversion rates that apply to this policy,
        which may be different at the time of any such conversion.

        Material terms and conditions of which you should be aware are as follows:

        _____
        _____
        _____

7. **INFORMATION APPLICABLE IF THIS IS A TERM POLICY**

    X   This policy is not a term policy.
    ☐   This policy is a term policy.  The term of this policy is _____
        and the person responsible for renewing this policy, if necessary, is as follows:

        _____
        _____
        _____

8. **INFORMATION APPLICABLE IF THIS IS A 'SECOND TO DIE' POLICY**

    ☐   This policy is not a "second to die" policy.

    X   This policy is a "second to die" policy that will not reach maturity until both insureds
        have died.
        **The total fixed return on this purchase is 125%.**  Based upon your purchase in

        **$20,000**_____ amount, you will receive  **$45,000**_____ upon maturity.

9. **PAYMENT OF POLICY PREMIUMS**

    The premiums due on this policy are due or will become due on an annual basis on November
    23, 2011 in the amount of $58,422.  Funds will be escrowed to pay the premiums due on this
    policy for 6 years and will be paid by the Trustee, Mills Potoczak & Co., in accordance with
    the terms set forth in the Life Settlement Purchase Agreement.

**SELLERS.CA Disclosure Statement**
**11/3/2011**
**Page 2 of 3**



**FOIA Confidential Treatment Requested**                    PWCG021329

Exhibit 3 Page 57

In the event that the premium reserves described in the Life Settlement Purchase Agreement are exhausted, only then will you be responsible for a payment of your pro-rata share of any unpaid premiums that become due to keep this policy in force.

### 10. INFORMATION ABOUT CONTESTABILITY OF THIS POLICY

This policy is beyond the state statute for contestability because the required amount of time has elapsed since the original date of issue of this policy or the insurance company that issued this policy has waived the contestability provision in writing.

### 11. POLICY OWNER

This policy will be owned by:

> PWCG TRUST, MILLS POTOCZAK & CO. - TRUSTEE
> 27600 CHAGRIN BLVD., SUITE 200
> CLEVELAND, OH 44122
> (216) 464-7481

I have reviewed this Life Settlement Disclosure Form and wish to purchase the Interest described herein.

| LIFE SETTLEMENT PURCHASER(S) | LIFE SETTLEMENT PURCHASER(S) |
|---|---|
| Signature | Signature |
| **Mary Jane Tomiaye Rising** | |
| Printed Name | Printed Name |
| REDACTED | |
| Address | Address |
| **West Covina, CA 91797** | |
| City, State, Zip | City, State, Zip |
| REDACTED | |
| Telephone Number | Telephone Number |
| Facsimile Number | Facsimile Number |
| Date | Date |

**SELLERS.CA Disclosure Statement**
**11/3/2011**
**Page 3 of 3**

**FOIA Confidential Treatment Requested**

PWCG021330

Exhibit 3 Page 58



**FOIA Confidential Treatment Requested**

PWCG021331

Exhibit 3 Page 59



PACIFIC WEST CAPITAL GROUP, INC.
**LIFE SETTLEMENT PURCHASE AGREEMENT**
**No modifications to this Contract may be made without the written consent of the Parties**

**THIS LIFE SETTLEMENT PURCHASE AGREEMENT** ("Agreement") is made this ⎯⎯ day of ⎯⎯⎯⎯ 2011, by and between **Pacific West Capital Group, Inc.** ("PWCG" or the "Seller"), and ⎯⎯⎯⎯ **Mary Jane Tomiaye Rising** ⎯⎯⎯⎯ (the "Purchaser"). This Agreement covers the purchase of one or more interests in the death benefits of a life insurance policy insuring the life of an individual who is at least seventy-five (75) years old, or life settlement interests ("Interests").

**WHEREAS,** the Purchaser has reviewed and approves and adopts the criteria utilized by the Seller to purchase said Interests; and

**WHEREAS,** the Purchaser acknowledges that the economic benefit derived from the transaction(s) contemplated by this Agreement will result solely from the maturity of the life insurance policy(ies) upon the death of the insured(s), and will not be derived from the efforts of any person or entity employed by or associated with the Seller, and the Purchaser expressly waives any and all claims to the contrary; and

**NOW THEREFORE,** in consideration of the mutual covenants and agreements hereinafter set forth, each party hereby represents that it or its representatives has/have the requisite authority to enter into this Agreement and hereby agree as follows:

## 1. THE PURCHASE

    (a)    The Purchaser hereby agrees to deposit the sum of **Twenty Thousand Dollars** (**$ 20,000** ⎯⎯⎯⎯ ) to acquire an Interest from the Seller.

Upon maturity, Purchaser will receive payment of **125** % total fixed return.

    (b)    The Purchaser's deposit will be made simultaneous with the delivery of this executed Agreement to Seller, by delivering a check, or effecting a wire transfer, made payable to Seller's Escrow Agent, Mills Potoczak & Co. The Purchaser's deposit does not constitute a purchase or a commitment to purchase until five (5) business days after the Purchaser has received all of the disclosures required by California law.

    (c)    Beginning on the date Seller receives both this executed agreement and the purchase deposit, the Seller will provide, when available, information regarding life insurance policies which meet the requirements of Seller and Purchaser on a Life Settlement Disclosure Form. If after reviewing this information the Purchaser wishes to purchase the described Interests the Purchaser will sign and return the Life Settlement Disclosure Form.

Page 1

Purchaser's Initials



FOIA Confidential Treatment Requested

PWCG021333

Exhibit 3 Page 61

(d)     Upon Seller's receipt of the executed Life Settlement Disclosure Form, but in no event sooner than five (5) days after Purchaser's receipt of the Life Settlement Disclosure Form, the Seller will obtain confirmation of the recording of a change of ownership of such Policy to PWCG Trust and a confirmation of irrevocable beneficiary.  In the case of a Group Policy, the Seller will obtain a confirmation of the recording of an absolute assignment of such Group Policy to the PWCG Trust and a confirmation of the recording of a change of beneficiary under such Policy naming as beneficiary the PWCG Trust.  To the extent that the Seller does not at the date of this Agreement have available such policies, the Seller shall use its reasonable efforts to obtain a suitable policy(ies) as soon as practicable after the date of this Agreement.

(e)     Upon the maturity of the life insurance policy(ies) in which Purchaser has purchased a life settlement interest, the Seller's Post Closing Services Company shall file a claim for the death benefits with the appropriate insurance company.  When the PWCG Trust receives payment of such claim, the Purchaser will be paid its pro rata share of the death benefits.

(f)     The owner of the life insurance policy in which you will obtain an interest will be a trust.  The current trust is PWCG Trust.  The current Trustee of the PWCG Trust is Mills Potoczak & Co.  The Trustee's sole responsibilities are to maintain accounts for the purpose of making the premium payments as more fully described in Section 2(b) of this Purchase Agreement, to be the beneficiary for the death benefits of the life insurance policy in which you obtain an Interest and to disburse the death benefits in accordance with the assignments of benefits relating to that policy. PWCG has contracted with Mill Potoczak & Co. to perform a certain post closing services as the Trustee, as more fully set forth in Paragraph 3(n) herein.

(g)     The Seller's Escrow Agent is Mills Potoczak & Co., 27600 Chagrin Blvd./ Suite 200 Cleveland, OH 44122.

(h)     The responsibilities of the Escrow Agent are:

1.   To hold the funds forwarded by the Purchaser pursuant to this Agreement.
2.   To hold the documents received from the Seller of a policy when required.
3.   To receive and review written confirmation that the insurance company has accepted, recognized and/or noted on its books and records the transfer of the policy ownership and the change of beneficiary(ies).
4.   To make disbursements at the direction of the Trustee.

(i)     The Escrow Agent is not representing the Purchaser in this transaction and has no responsibility to the Purchaser with regard to this transaction other than to hold the funds in escrow in accordance with Section 1h.

(j)     Purchaser recognizes that the Trustee and Escrow Agent shall not incur any liability to the Seller or to Purchaser for any damages, losses or expenses which either party may sustain or incur, unless the same is a direct result of the gross negligence or intentional misconduct of Trustee or Escrow Agent.  Trustee and Escrow Agent shall be protected in any action taken or omitted in good faith with respect to their duties and responsibilities.  Trustee and Escrow Agent shall be entitled to rely on any document(s) which Trustee and Escrow Agent

Purchaser's Initials

FOIA Confidential Treatment Requested

PWCG021334

Exhibit 3 Page 62



**FOIA Confidential Treatment Requested**

reasonably believe satisfy the terms and conditions of the escrow. The Seller and Purchaser each hereby agree to indemnify and hold harmless Trustee and Escrow Agent from and against all losses, except those caused by gross negligence or intentional misconduct, claims, damages, liabilities and expenses which it may sustain or incur hereunder, including, without limitation, reasonable attorney's fees, which may be imposed upon Trustee or Escrow Agent or incurred by Trustee and Escrow Agent in connection with the performance of their duties.

(k)     Seller may from time to time make available for purchase an Interest in a "second to die" life insurance policy. These policies typically insure the life of a husband and wife, and do not mature until both insureds have died.

## 2. THE SELLER'S OBLIGATIONS TO THE PURCHASER

(a)     The Seller represents and warrants to the Purchaser that:

(1)     The Insured's attending physician shall confirm in writing that the Insured is of sound mind and under no constraint or undue influence for the life insurance policies in which an Interest is being purchased.

(2)     The life insurance policies in which an Interest is being purchased must be in effect and beyond their respective contestability and suicide periods.

(3)     The insurance company that issued the policies must have, at the time Seller is provided the Life Settlement Disclosure Form, a rating of "A" or better as determined by Standard & Poors.

(b)     Seller has established a five (5) level plan in order to provide that premium payments are made until the date of maturity of the policy. The first level involves the placement of funds for each policy's premiums in a premium escrow account sufficient to pay premiums for a period of time as disclosed in the Life Settlement Policy Disclosure Form. Second, some policies have a disability waiver rider that pays premiums in the event the insured becomes disabled. Third, an initial general premium reserve is established to pay premiums on policies not fully paid by levels one and two. The money for the additional premium reserve comes from the distribution of 1% of all purchase money received by the Escrow Agent. Fourth, an additional general premium reserve is established to pay premiums on policies not fully paid at levels one, two and three. The money for this premium reserve comes from unused premiums of matured policies and interest earned on the active premium escrow account. In the event all of the premium escrow accounts are depleted, in order to safeguard the policy against a lapse in coverage, it will become the responsibility of the Purchaser to make pro rata premium payments on any policy in which they have an Interest. In that event the Trustee shall notify the Purchaser no less than 90 days before any premium payment becomes due.

(c)     The Seller shall obtain a written release signed by all the present owners and beneficiaries under the Policy(ies), waiving any and all present and/or future rights to ownership and beneficial interests under the Policy(ies) and provide this information to the Trustee;

(d)     Seller shall obtain and provide to the Trustee the following documents:

Page 3

Purchaser's Initials

Exhibit 3 Page 64



**FOIA Confidential Treatment Requested**

PWCG021337

Exhibit 3 Page 65

1. Change of Ownership
2. Change of Beneficiary

(e)     In order to protect the confidentiality and privacy of insureds, their names will not be disclosed to the Purchasers. Insureds will be given a code number which will be recorded and maintained in the records of the Seller and the servicing company's databases. Any insurance company documents provided to the Purchaser will have any identifying information regarding the insured redacted and replaced with this code number.

(f)     Except as set forth in this Agreement, the Seller makes no representations or warranties of any kind, nature or description whatsoever and Purchaser expressly acknowledges that no representations or warranties have been made. The Seller is not liable or bound in any manner by express or implied warranties, guaranties, promises, statements or representations, not included within this Agreement, that are made or furnished by any broker, agent, employee, servant or other person purporting to represent the Seller.

## 3.  DISCLOSURES TO LIFE SETTLEMENT PURCHASERS

(a)     The Seller is Pacific West Capital Group, Inc., whose principal business and mailing address is 1901 Avenue of the Stars Suite 360 Los Angeles, CA 90067 and whose phone number is 310-578-6343.

(b)     The suitability standards for prospective purchasers, set forth at California Corporations Code §25102(q)(1), are as follows:

(1)     Sales of securities described in this subdivision are made only to qualified purchasers or other persons the issuer reasonably believes, after reasonable inquiry, to be qualified purchasers. A corporation, partnership, or other organization specifically formed for the purpose of acquiring the securities offered by the issuer in reliance upon this exemption may be a qualified purchaser only if each of the equity owners of the corporation, partnership, or other organization is a qualified purchaser. Qualified purchasers include the following:

(A)     A person designated in Section 260.102.13 of Title 10 of the California Code of Regulations.

(B)     A person designated in subdivision (i) or any rule of the commissioner adopted thereunder.

(C)     A pension or profit-sharing trust of the issuer, a self-employed individual retirement plan, or an individual retirement account, if the investment decisions made on behalf of the trust, plan, or account are made solely by persons who are qualified purchasers.

(D)     An organization described in Section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, each with total assets in excess of five million dollars ($5,000,000) according to its most recent audited financial statements.

Page 4

Purchaser's Initials

**FOIA Confidential Treatment Requested**

PWCG021338

Exhibit 3 Page 66



**FOIA Confidential Treatment Requested**

(E)    A natural person who is either an individual or an individual jointly with their spouse, they warrant that they (i) have a minimum net worth of one hundred fifty thousand dollars ($150,000) and have, during the immediately preceding tax year, gross income in excess of one hundred thousand dollars ($100,000) and reasonably expect gross income in excess of one hundred thousand dollars ($100,000) during the current tax year or (ii) have a minimum net worth of two hundred fifty thousand dollars ($250,000). "Net worth" shall be determined exclusive of home, home furnishings, and automobiles.    Other assets included in the computation of net worth may be valued at fair market value.

Each natural person specified above, by reason of his or her business or financial experience, or the business or financial experience of his or her professional advisor, who is unaffiliated with and who is not compensated, directly or indirectly, by the Issuer of any affiliate or selling agent of the Issuer, can be reasonably assumed to have the capacity to protect his or her interests in connection with the transaction. The amount of investment of each natural person shall not exceed 10 percent of the net worth, as determined by this subdivision, of that natural person.

(F)    Any other purchaser designated as qualified by rule of the commissioner.

(c)    PWCG is a corporation incorporated in the State of California.

(d)    PWCG is in the business of facilitating the sale of interests in life settlements.

(e)    Andrew Calhoun is the President, director and sole shareholder of PWCG.

(f)    Under Section 25508.5 of the California Corporations Code, a person who purchases a life settlement contract or a fractionalized or pooled interest therein may rescind or cancel the purchase at any time before seven (7) calendar days after the date the person remits the required consideration to the issuer or the issuer's agent by giving written notice of rescission or cancellation to the issuer or the issuer's agent. No specific form is required for the rescission or cancellation. The notice is effective when personally delivered, deposited in the United States mail, or deposited with a commercial courier or delivery service. If the Purchaser rescinds or cancels the purchase, the Seller shall refund all of the Purchaser's money within seven (7) calendar days after receipt of the notice of rescission or cancellation.

(g)    The life expectancy of any particular insured and the annual rate of return on a life settlement contract are only estimates and cannot be guaranteed. The annualized rate of return would be higher if the actual life expectancy turns out to be less than the estimated life expectancy of the insured. The annualized rate of return would be lower if the actual life expectancy turns out to be more than the estimated life expectancy of the insured.

Page 5

Purchaser's Initials

**FOIA Confidential Treatment Requested**

PWCG021340

Exhibit 3 Page 68



**FOIA Confidential Treatment Requested**

(h)     The purchase of the death benefit of one or more life insurance policies should not be considered a liquid purchase.  It is impossible to predict the exact time of the insured's death. No fixed date for the payment of the death benefit to Purchaser has been or can be determined at this time.  Purchaser's funds are illiquid and will not be available until after the death of the insured.  Purchaser acknowledges that he/she has sufficient financial resources to bear the risk associated with the purchase.

(i)     The Purchaser's annual rate of return on purchase decreases as the life of the insured continues. The Purchaser's annual rate of return on purchase may be further adversely affected by, without limitation, (i) the financial stability of the insurance companies issuing the Policies, or (ii) the payment limitations in effect from time to time set by the State Guarantee Funds of the states where the Policies were issued.

(j)     Each Purchaser should consult with his or her own tax advisor regarding the tax consequences of the purchase of a life settlement interest.  If the Purchaser is using retirement funds or accounts for the purchase, he should ask his or her tax advisor whether or not any adverse tax consequences might result from the use of those funds for this purchase.

(k)     Purchasers should be aware that some types of group life insurance policies may contain limitations or caps in the amount of coverage that may be converted.  Also, the conversion of a group policy to an individual policy may result in additional premium payments.

(l)     The Trustee is responsible for making the premium payments as outlined in Section 2(b) of this Agreement.  The current Trustee is Mills, Potoczak & Co., 27600 Chagrin Boulevard, Suite 200, Cleveland, Ohio 44122.

(m)     A Life Settlement Disclosure Form containing specific information regarding the insurance policy(ies) in which the Purchaser may obtain an interest will be provided to the Purchaser at least five (5) business days prior to the closing of any purchase.  The commitment to purchase an interest in the death benefits of a specific policy shall not be final until the Purchaser has received this information and been given the opportunity to advise the Seller if he/she wishes to decline the purchase.

(n)     There are certain post-closing servicing activities that must be undertaken, but are not performed by Seller. These servicing activities include but are not limited to maintaining contact with the insured, tracking the health status of the insured, monitoring the status of disability claims by insured, converting group policies to individual plans of insurance, and filing claims for benefits and death certificates with the insurance companies.  The Seller currently uses Mills Potoczak & Co. to perform the above-described activities. Mills Potoczak & Co. is located at 27600 Chagrin Blvd, Suite 200, Cleveland, OH  44122.

Purchaser's Initials

FOIA Confidential Treatment Requested

PWCG021342

Exhibit 3 Page 70



FOIA Confidential Treatment Requested

PWCG021343

Exhibit 3 Page 71

## 4. REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser represents and warrants to Seller that:

(a)     Purchaser is a resident of the State of California and the address and other information set forth herein are true and correct.

(b)     The Interest(s) is/are being acquired solely for the Purchaser's own account and not with a view to or for sale in connection with the distribution of the security.

(c)     Other than the Seller's agent, Purchaser has not dealt with any broker or finder in connection with the transaction set forth in this Agreement.

(d)     He/she is sophisticated in financial matters or has access to professional advice, has adequate means for providing for current financial needs and possible personal contingencies, is capable of evaluating the merits and risks of obtaining an Interest and also acknowledges that, once the transaction closes, the funds committed are not liquid and will not be available until the policy matures.

(e)     The Purchaser has been furnished with such information by the Seller as Purchaser requires and has requested regarding the Interest and has had any questions arising from such review answered by the Seller to Purchaser's satisfaction. Purchaser acknowledges, however, that Purchaser has not and will not be furnished with any information regarding the identity of the Insured(s) and purchases this Interest(s) with the expectation that the identity of the Insured will not be known. Purchaser has full legal capacity to enter into this Agreement.

(f)     Purchaser acknowledges that the Seller is willing to provide additional information regarding this transaction and the business of the Seller beyond that contained in any documentation previously provided. The Purchaser also acknowledges that he/she has also had the opportunity to evaluate the merits and risks of this transaction.

(g)     Purchaser acknowledges that he/she understands the meaning and legal consequences of the above representations and warranties and that the Seller has relied on these representations and warranties in entering into this Agreement. Purchaser agrees to indemnify and hold harmless the Seller and its principals, agents, and employees from any damage or liability due to or arising out of a breach of any representation or warranty made herein by Purchaser.

(h)     Purchaser authorizes the Seller to enter into any agreements or contracts which may be necessary in order to effectuate the purchase of Interests on behalf of the Purchaser.

(i)     Purchaser represents that he/she has completed a Suitability Questionnaire and that he/she understands that Seller will rely upon the representations made in that Suitability Questionnaire for the purpose of determining if the Purchaser is qualified.

(j)     Purchaser acknowledges that the economic benefit derived from the transaction(s) contemplated by this Agreement will result solely from the maturity of the life insurance

Page 7

Purchaser's Initials

**FOIA Confidential Treatment Requested**

PWCG021344

Exhibit 3 Page 72



**FOIA Confidential Treatment Requested**

**PWCG021345**

Exhibit 3 Page 73

policy(ies) upon the death of the insured(s), and will not be derived from the efforts of any person or entity employed by or associated with the Seller.

### 5. MISCELLANEOUS.

(a)     **Entire Agreement**. This Agreement constitutes the entire agreement between the Seller and Purchaser. No change, modification, termination or amendment of this Agreement shall be valid unless it is in writing and signed by both the Seller and Purchaser.

(b)     **Section Headings**. The section headings contained in this Agreement are for reference only and shall not in any way affect the meaning or interpretation of this Agreement.

(c)     **Gender**. Pronouns shall be deemed to include masculine, feminine and neuter genders and singular or plural numbers as appropriate.

(d)     **Applicable Law**. This Agreement shall be construed and enforced in accordance with, and governed by, without exception, the laws of California. A proceeding arising from or relating to this Agreement must be brought in the Superior Court of California, County of Los Angeles, to the exclusion of any other court of competent jurisdiction.

(e)     **No Third Party Benefited**. This Agreement is solely for the benefit of the parties hereto, and no other person or entity shall have any right, benefit, priority or interest under this Agreement, or because of the existence of this Agreement.

(f)     **Notices**. Any notice required or permitted to be given under this Agreement shall be sufficient if in writing and if sent by registered or certified mail or recognized overnight delivery service to the parties at their respective addresses set forth below or to such other address as either party may designate by notice given in accordance with this Agreement.

> Seller
> Pacific West Capital Group, Inc.
> 1901 Avenue of the Stars Suite 360
> Los Angeles, CA 90067
>
> Purchaser
> **Mary Jane Tomijaye Rising**
> REDACTED
> **West Covina, CA 91797**

(g)     **Non Waiver**. No failure on the Seller's part to exercise, and no delay in exercising, any right, power or remedy under this Agreement or under applicable law shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. All of Purchaser's rights and remedies under this Agreement or arising under applicable law are separate and cumulative and may be pursued separately, successively or concurrently, or not pursued, without affecting or limiting any other right of Purchaser.

Page 8                                                                 Purchaser's Initials

**FOIA Confidential Treatment Requested**                                           PWCG021346

Exhibit 3 Page 74



**FOIA Confidential Treatment Requested**

(h) **Invalidity and Severability**. If any provisions of this Agreement are held invalid or unenforceable, such invalidity or unenforceability shall not affect the other provisions of this Agreement, and to that extent, the provisions of this Agreement are intended to be and shall be deemed severable.

(i) **Successors and Assigns**. This Agreement shall be binding upon and inure to the benefit of the heirs, legal and personal representatives, successors, and assignees of the Purchaser.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

PACIFIC WEST CAPITAL GROUP, INC.

By: _____

Date: 12/20/11

READ AND APPROVED
LIFE SETTLEMENT PURCHASER(S)
Date 12/7/11

Signature _____

**Mary Jane Tomiaye Rising**
Printed Name

REDACTED
Social Security or Tax ID#

REDACTED
Address

**West Covina, CA 91797**
City, State, Zip

REDACTED
Telephone Number

_____
Facsimile Number

READ AND APPROVED
LIFE SETTLEMENT PURCHASER(S)
Date _____

Signature _____

_____
Printed Name

_____
Social Security or Tax ID#

_____
Address

_____
City, State, Zip

_____
Telephone Number

_____
Facsimile Number

Page 9

Purchaser's Initials

**FOIA Confidential Treatment Requested**

PWCG021348

Exhibit 3 Page 76



**FOIA Confidential Treatment Requested**

PWCG021349

Exhibit 3 Page 77



## PACIFIC WEST CAPITAL GROUP, INC.

### PURCHASER SUITABILITY QUESTIONNAIRE

Please read and complete this Purchaser Suitability Questionnaire (this "Questionnaire") in its entirety.

If anyone else is signing the same Life Settlement Purchase Agreement (the "Agreement") that you are signing, please specify the name(s) of these individuals in the space provided below:

_____

If a corporation, partnership, or other organization specifically formed for the purpose of acquiring a Life Settlement Interest has signed the Purchase Agreement, each equity owner of the corporation, partnership, or other organization must complete a separate Questionnaire.

We recognize that the information requested below is information that you may consider to be private. Please be assured that we are obtaining this information because we are required to make reasonable and diligent inquiry under the California Corporation Code that you are a "qualified purchaser" as that term is defined under §25102 and that we will not provide any of this information to a party not affiliated with or involved in the proposed transaction, unless required by law. **Without this information, we cannot process your purchase agreement.**

**Personal Information**

Name    **Mary Jane Temistre Rising**
Address    REDACTED
     West Covina, CA 91791-5304
Telephone    REDACTED
Date of Birth    152
Occupation    Retired Educator
Highest level of formal education    MA
Number of dependents    0
Marital Status    □ Single   ☑ Married   □ Divorced   □ Separated   □ Widowed

**Spouse Information**

Name    **Lea Kenneth Rising**
Occupation    Retired
Highest level of formal education    Bachelors

**Additional Background Information**

How did you hear about life settlements?   Life Settlement Presentation
Who recommended the purchase to you?   Oriz Gunn
Do you have a previous relationship with that person or entity? If so, please explain.   no
Have you liquidated another asset to make this purchase?   no
If so, please describe   N/A
With what source of funds are you making this purchase?   Saving

**Income Information**

Please provide the information requested below. Please also specify if you are completing this Questionnaire individually or jointly with your spouse.

☑   Individually     □   Jointly With Spouse

Purchaser's / (s') Initials

Page 1

FOIA Confidential Treatment Requested

PWCG021350

Exhibit 3 Page 78



**FOIA Confidential Treatment Requested**

Please provide your annual gross income in U.S. Dollars ($USD) for each time period indicated:

**For the Current Tax Year**
The total aggregate gross income of all parties with respect to whom information is being provided in this Questionnaire for the current tax year is expected to be.   REDACTED

**For Previous Tax Year**
The total aggregate gross income of all parties with respect to whom information is being provided in this Questionnaire for the immediately previous tax year, 20___, was $_____, according to the income tax return filed with the United States Internal Revenue Service for that tax year.

**For The Next Previous Tax Year**
The total aggregate gross income of all parties with respect to whom information is being provided in this Questionnaire for the next previous tax year, 20___, was $_____, according to the income tax return filed with the United States Internal Revenue Service for that tax year.

**What are the sources of your income?** Please check all that apply.

☐ Employment    ☐ Inheritance or Trust    ☑ Savings and Investment    ☐ Other

If you selected "Other", please describe: _____

**Personal Net Worth Information**
Please provide your net worth in U.S. Dollars, excluding the fair market value of your home, home furnishings, and automobiles. $   REDACTED

**Investment Information & Experience**
Please check each box that applies with respect to your participation in the listed form of investment.

| PAST | CURRENT | | PAST | CURRENT | |
|------|---------|--------------------|------|---------|----------------------|
| ☑ | ☑ | Mutual Funds | ☐ | ☐ | Commercial Paper |
| ☑ | ☐ | Stocks/Equities | ☐ | ☑ | 401(k) or Keogh Plans |
| ☐ | ☐ | Bonds | ☐ | ☐ | Limited Partnerships |
| ☐ | ☑ | IRAs or SEPs | ☐ | ☐ | CDs |
| ☐ | ☑ | Annuities | ☐ | ☐ | Options |
| ☐ | ☐ | Real Estate | ☐ | ☐ | Futures |
| ☒ | ☐ | Life Settlements | ☐ | ☑ | Other |

If you selected "Other", please describe: _Precious Metals_

**Representations**

I have carefully examined my financial resources, investment objectives, and tolerance for risk. I sufficiently understand the risk factors and objectives associated with this investment, either independently or as explained to me by one or more professional financial advisors not affiliated with or in any way compensated by Seller or its representatives. I have read and completed this Questionnaire. I represent and warrant that the information contained herein is complete and accurate and may be relied upon by Seller. I also agree to notify Seller of any material change in any of the information herein prior to the closing of any purchase that I make under the Purchase Agreement that I have entered into with Seller.

Signature: _____   Date: _12/7/11_
Print Name: _Mary Jade Tompkee Risteu_

Through my signature below, I am joining in this Questionnaire and I am making all of the same representations and warranties appearing above as though set forth here.

Signature: _Lee Kenneth Risten_   Date: _12/7/11_
Print Name: _Lee Kenneth Risteu_

Purchaser's / (s') Initials

Page 2

**FOIA Confidential Treatment Requested**



**FOIA Confidential Treatment Requested**

**PWCG021353**

Exhibit 3 Page 81