reasonably believe satisfy the terms and conditions of the escrow. The Seller and Purchaser each hereby agree to indemnify and hold harmless Trustee and Escrow Agent from and against all losses, except those caused by gross negligence or intentional misconduct, claims, damages, liabilities and expenses which it may sustain or incur hereunder, including, without limitation, reasonable attorney's fees, which may be imposed upon Trustee or Escrow Agent or incurred by Trustee and Escrow Agent in connection with the performance of their duties.

(k)     Seller may from time to time make available for purchase an Interest in a "second to die" life insurance policy. These policies typically insure the life of a husband and wife, and do not mature until both insureds have died.

## 2. THE SELLER'S OBLIGATIONS TO THE PURCHASER

(a)     The Seller represents and warrants to the Purchaser that:

(1)     The Insured's attending physician shall confirm in writing that the Insured is of sound mind and under no constraint or undue influence for the life insurance policies in which an Interest is being purchased.

(2)     The life insurance policies in which an Interest is being purchased must be in effect and beyond their respective contestability and suicide periods.

(3)     The insurance company that issued the policies must have, at the time Seller is provided the Life Settlement Disclosure Form, a rating of "A" or better as determined by Standard & Poors.

(b)     Seller has established a five (5) level plan in order to provide that premium payments are made until the date of maturity of the policy. The first level involves the placement of funds for each policy's premiums in a premium escrow account sufficient to pay premiums for a period of time as disclosed in the Life Settlement Policy Disclosure Form. Second, some policies have a disability waiver rider that pays premiums in the event the insured becomes disabled. Third, an initial general premium reserve is established to pay premiums on policies not fully paid by levels one and two. The money for the additional premium reserve comes from the distribution of 1% of all purchase money received by the Escrow Agent. Fourth, an additional general premium reserve is established to pay premiums on policies not fully paid at levels one, two and three. The money for this premium reserve comes from unused premiums of matured policies and interest earned on the active premium escrow account. In the event all of the premium escrow accounts are depleted, in order to safeguard the policy against a lapse in coverage, it will become the responsibility of the Purchaser to make pro rata premium payments based on the actual cost of insurance at the time premiums become due, on any policy in which they have an Interest. In that event the Trustee shall notify the Purchaser no less than 90 days before any premium payment becomes due.

(c)     The Seller shall obtain a written release signed by all the present owners and beneficiaries under the Policy(ies), waiving any and all present and/or future rights to ownership and beneficial interests under the Policy(ies) and provide this information to the Trustee;

Purchaser's Initials

Page 3

(d)   Seller shall obtain and provide to the Trustee the following documents:

1. Change of Ownership
2. Change of Beneficiary

(e)   In order to protect the confidentiality and privacy of insureds, their names will not be disclosed to the Purchasers. Insureds will be given a code number which will be recorded and maintained in the records of the Seller and the servicing company's databases. Any insurance company documents provided to the Purchaser will have any identifying information regarding the insured redacted and replaced with this code number.

(f)   Except as set forth in this Agreement, the Seller makes no representations or warranties of any kind, nature or description whatsoever and Purchaser expressly acknowledges that no representations or warranties have been made. The Seller is not liable or bound in any manner by express or implied warranties, guaranties, promises, statements or representations, not included within this Agreement, that are made or furnished by any broker, agent, employee, servant or other person purporting to represent the Seller.

### 3. DISCLOSURES TO LIFE SETTLEMENT PURCHASERS

(a)   The Seller is Pacific West Capital Group, Inc., whose principal business and mailing address is 1901 Avenue of the Stars Suite 680 Los Angeles, CA 90067 and whose phone number is 310-578-6343.

(b)   The suitability standards for prospective purchasers, set forth at California Corporations Code §25102(q)(1), are as follows:

(1)   Sales of securities described in this subdivision are made only to qualified purchasers or other persons the issuer reasonably believes, after reasonable inquiry, to be qualified purchasers. A corporation, partnership, or other organization specifically formed for the purpose of acquiring the securities offered by the issuer in reliance upon this exemption may be a qualified purchaser only if each of the equity owners of the corporation, partnership, or other organization is a qualified purchaser. Qualified purchasers include the following:

(A)   A person designated in Section 260.102.13 of Title 10 of the California Code of Regulations.

(B)   A person designated in subdivision (i) or any rule of the commissioner adopted thereunder.

(C)   A pension or profit-sharing trust of the issuer, a self-employed individual retirement plan, or an individual retirement account, if the investment decisions made on behalf of the trust, plan, or account are made solely by persons who are qualified purchasers.

Page 4

Purchaser's Initials

FOIA Confidential Treatment Requested

(D) An organization described in Section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, each with total assets in excess of five million dollars ($5,000,000) according to its most recent audited financial statements.

(E) A natural person who is either an individual or an individual jointly with their spouse, they warrant that they (i) have a minimum net worth of one hundred fifty thousand dollars ($150,000) and have, during the immediately preceding tax year, gross income in excess of one hundred thousand dollars ($100,000) and reasonably expect gross income in excess of one hundred thousand dollars ($100,000) during the current tax year or (ii) have a minimum net worth of two hundred fifty thousand dollars ($250,000). "Net worth" shall be determined exclusive of home, home furnishings, and automobiles. Other assets included in the computation of net worth may be valued at fair market value.

Each natural person specified above, by reason of his or her business or financial experience, or the business or financial experience of his or her professional advisor, who is unaffiliated with and who is not compensated, directly or indirectly, by the Issuer of any affiliate or selling agent of the Issuer, can be reasonably assumed to have the capacity to protect his or her interests in connection with the transaction. The amount of investment of each natural person shall not exceed 10 percent of the net worth, as determined by this subdivision, of that natural person.

(F) Any other purchaser designated as qualified by rule of the commissioner.

(c) PWCG is a corporation incorporated in the State of California.

(d) PWCG is in the business of facilitating the sale of interests in life settlements.

(e) Andrew Calhoun is the President, director and sole shareholder of PWCG.

(f) Under Section 25508.5 of the California Corporations Code, a person who purchases a life settlement contract or a fractionalized or pooled interest therein may rescind or cancel the purchase at any time before seven (7) calendar days after the date the person remits the required consideration to the issuer or the issuer's agent by giving written notice of rescission or cancellation to the issuer or the issuer's agent. No specific form is required for the rescission or cancellation. The notice is effective when personally delivered, deposited in the United States mail, or deposited with a commercial courier or delivery service. If the Purchaser rescinds or cancels the purchase, the Seller shall refund all of the Purchaser's money within seven (7) calendar days after receipt of the notice of rescission or cancellation.

Page 5

Purchaser's Initials

PWCG253748

Exhibit 39 Page 719