6. **INFORMATION APPLICABLE IF THIS IS A GROUP POLICY**

   X   This policy is not a group policy.
   ☐   This policy is a group policy. The name, address, and telephone number of the group is as follows:

   Name _____
   Address _____
   Telephone ( ___ ) _____

   ☐   You should be aware that material terms and conditions govern the conversion of this group policy to an individual policy. This information is as follows:

   Should premiums on this policy increase upon such conversion, the premiums due on this policy would increase from $_____ on a(n) _____ basis to $_____ on a(n) _____ basis upon any such conversion. This information is based on current conversion rates that apply to this policy, which may be different at the time of any such conversion.

   Material terms and conditions of which you should be aware are as follows:
   _____
   _____
   _____

7. **INFORMATION APPLICABLE IF THIS IS A TERM POLICY**

   X   This policy is not a term policy.
   ☐   This policy is a term policy. The term of this policy is _____ and the person responsible for renewing this policy, if necessary, is as follows:
   _____
   _____

8. **INFORMATION APPLICABLE IF THIS IS A 'SECOND TO DIE' POLICY**

   X   This policy is not a "second to die" policy.
   **The total fixed return on this purchase is 125%.** Based upon your purchase in

   _____$ 20,000.00_____ amount, you will receive _____$ 45,000.00_____ upon maturity.

   ☐   This policy is a "second to die" policy that will not reach maturity until both insureds have died.

9. **PAYMENT OF POLICY PREMIUMS**

   The premiums due on this policy are due or will become due on an annual basis on September 6, 2013 in the amount of $97,898. Funds will be escrowed to pay the premiums due on this policy for 9 years and will be paid by the Trustee, Mills Potoczak & Co., in accordance with the terms set forth in the Life Settlement Purchase Agreement.

   **SELLERS.CA** Disclosure Statement
   6/25/2013
   Page 2 of 3

FOIA Confidential Treatment Requested

PWCG253729

Exhibit 39 Page 771

In the event that the premium reserves described in the Life Settlement Purchase Agreement are exhausted, only then will you be responsible for a payment of your pro-rata share of any unpaid premiums that become due, based on the actual cost of insurance at that time, to keep this policy in-force.

### 10. INFORMATION ABOUT CONTESTABILILTY OF THIS POLICY

This policy is beyond the state statute for contestability because the required amount of time has elapsed since the original date of issue of this policy or the insurance company that issued this policy has waived the contestability provision in writing.

### 11. POLICY OWNER

This policy will be owned by:

PWCG TRUST, MILLS POTOCZAK & CO. - TRUSTEE
27600 CHAGRIN BLVD., SUITE 200
CLEVELAND, OH 44122
(216) 464-7481

I have reviewed this Life Settlement Disclosure Form and wish to purchase the Interest described herein.

| LIFE SETTLEMENT PURCHASER(S) | LIFE SETTLEMENT PURCHASER(S) |
|---|---|
| Signature | Signature |
| Printed Name | Printed Name |
| Address | Address |
| City, State, Zip — THOUSAND OAKS CA 91360 | City, State, Zip — THOUSAND OAKS CA 91360 |
| Telephone Number | Telephone Number |
| Facsimile Number | Facsimile Number |
| Date 3-20-2014 | Date 3-20-2014 |

SELLERS.CA Disclosure Statement
6/25/2013
Page 3 of 3



**PACIFIC WEST CAPITAL GROUP, INC.**
**LIFE SETTLEMENT PURCHASE AGREEMENT**
No modifications to this Contract may be made without the written consent of the Parties

THIS LIFE SETTLEMENT PURCHASE AGREEMENT ("Agreement") is made this __14th__ day of __March__ 2014, by and between **Pacific West Capital Group, Inc.** ("PWCG" or the "Seller"), and __The Bertini Revocable Trust__ (the "Purchaser"). This Agreement covers the purchase of one or more interests in the death benefits of a life insurance policy insuring the life of an individual who is at least seventy-five (75) years old, or life settlement interests ("Interests").

**WHEREAS**, the Purchaser has reviewed and approves and adopts the criteria utilized by the Seller to purchase said Interests; and

**WHEREAS**, the Purchaser acknowledges that the economic benefit derived from the transaction(s) contemplated by this Agreement will result solely from the maturity of the life insurance policy(ies) upon the death of the insured(s), and will not be derived from the efforts of any person or entity employed by or associated with the Seller, and the Purchaser expressly waives any and all claims to the contrary; and

**NOW THEREFORE**, in consideration of the mutual covenants and agreements hereinafter set forth, each party hereby represents that it or its representatives has/have the requisite authority to enter into this Agreement and hereby agree as follows:

### 1. THE PURCHASE

(a) The Purchaser hereby agrees to deposit the sum of __Twenty Thousand Dollars__ (__$20,000__) to acquire an Interest from the Seller.

Upon maturity, Purchaser will receive payment of __150__ % total fixed return.

(b) The Purchaser's deposit will be made simultaneous with the delivery of this executed Agreement to Seller, by delivering a check, or effecting a wire transfer, made payable to Seller's Escrow Agent, Bank of Utah. The Purchaser's deposit does not constitute a purchase or a commitment to purchase until five (5) business days after the Purchaser has received all of the disclosures required by California law.

(c) Beginning on the date Seller receives both this executed agreement and the purchase deposit, the Seller will provide, when available, information regarding life insurance policies which meet the requirements of Seller and Purchaser on a Life Settlement Disclosure Form. If after reviewing this information the Purchaser wishes to purchase the described Interests the Purchaser will sign and return the Life Settlement Disclosure Form.

Purchaser's Initials

Page 1

(d) Upon Seller's receipt of the executed Life Settlement Disclosure Form, but in no event sooner than five (5) days after Purchaser's receipt of the Life Settlement Disclosure Form, the Seller will obtain confirmation of the recording of a change of ownership of such Policy to PWCG Trust and a confirmation of irrevocable beneficiary. In the case of a Group Policy, the Seller will obtain a confirmation of the recording of an absolute assignment of such Group Policy to the PWCG Trust and a confirmation of the recording of a change of beneficiary under such Policy naming as beneficiary the PWCG Trust. To the extent that the Seller does not at the date of this Agreement have available such policies, the Seller shall use its reasonable efforts to obtain a suitable policy(ies) as soon as practicable after the date of this Agreement.

(e) Upon the maturity of the life insurance policy(ies) in which Purchaser has purchased a life settlement interest, the Seller's Post Closing Services Company shall file a claim for the death benefits with the appropriate insurance company. When the PWCG Trust receives payment of such claim, the Purchaser will be paid its pro rata share of the death benefits.

(f) The owner of the life insurance policy in which you will obtain an interest will be a trust. The current trust is PWCG Trust. The current Trustee of the PWCG Trust is Mills Potoczak & Co. The Trustee's sole responsibilities are to maintain accounts for the purpose of making the premium payments as more fully described in Section 2(b) of this Purchase Agreement, to be the beneficiary for the death benefits of the life insurance policy in which you obtain an Interest and to disburse the death benefits in accordance with the assignments of benefits relating to that policy. PWCG has contracted with Mill Potoczak & Co. to perform certain post-closing services as the Trustee, as more fully set forth in Paragraph 3(n) herein.

(g) The Seller's Escrow Agent is Bank of Utah, 200 E South Temple, Suite 210, Salt Lake City, UT 84111.

(h) The responsibilities of the Escrow Agent are:

1. To hold the funds forwarded by the Purchaser pursuant to this Agreement.
2. To make disbursements at the direction of the Trustee.

(i) The Escrow Agent is not representing the Purchaser in this transaction and has no responsibility to the Purchaser with regard to this transaction other than to hold the funds in escrow in accordance with Section 1h.

(j) Purchaser recognizes that the Trustee and Escrow Agent shall not incur any liability to the Seller or to Purchaser for any damages, losses or expenses which either party may sustain or incur, unless the same is a direct result of the gross negligence or intentional misconduct of Trustee or Escrow Agent. Trustee and Escrow Agent shall be protected in any action taken or omitted in good faith with respect to their duties and responsibilities. Trustee and Escrow Agent shall be entitled to rely on any document(s) which Trustee and Escrow Agent

Page 2

Purchaser's Initials

reasonably believe satisfy the terms and conditions of the escrow. The Seller and Purchaser each hereby agree to indemnify and hold harmless Trustee and Escrow Agent from and against all losses, except those caused by gross negligence or intentional misconduct, claims, damages, liabilities and expenses which it may sustain or incur hereunder, including, without limitation, reasonable attorney's fees, which may be imposed upon Trustee or Escrow Agent or incurred by Trustee and Escrow Agent in connection with the performance of their duties.

(k) Seller may from time to time make available for purchase an Interest in a "second to die" life insurance policy. These policies typically insure the life of a husband and wife, and do not mature until both insureds have died.

## 2. THE SELLER'S OBLIGATIONS TO THE PURCHASER

(a) The Seller represents and warrants to the Purchaser that:

(1) The Insured's attending physician shall confirm in writing that the Insured is of sound mind and under no constraint or undue influence for the life insurance policies in which an Interest is being purchased.

(2) The life insurance policies in which an Interest is being purchased must be in effect and beyond their respective contestability and suicide periods.

(3) The insurance company that issued the policies must have, at the time Seller is provided the Life Settlement Disclosure Form, a rating of "A" or better as determined by Standard & Poors.

(b) Seller has established a five (5) level plan in order to provide that premium payments are made until the date of maturity of the policy. The first level involves the placement of funds for each policy's premiums in a premium escrow account sufficient to pay premiums for a period of time as disclosed in the Life Settlement Policy Disclosure Form. Second, some policies have a disability waiver rider that pays premiums in the event the insured becomes disabled. Third, an initial general premium reserve is established to pay premiums on policies not fully paid by levels one and two. The money for the additional premium reserve comes from the distribution of 1% of all purchase money received by the Escrow Agent. Fourth, an additional general premium reserve is established to pay premiums on policies not fully paid at levels one, two and three. The money for this premium reserve comes from unused premiums of matured policies and interest earned on the active premium escrow account. In the event all of the premium escrow accounts are depleted, in order to safeguard the policy against a lapse in coverage, it will become the responsibility of the Purchaser to make pro rata premium payments based on the actual cost of insurance at the time premiums become due, on any policy in which they have an Interest. In that event the Trustee shall notify the Purchaser no less than 90 days before any premium payment becomes due.

(c) The Seller shall obtain a written release signed by all the present owners and beneficiaries under the Policy(ies), waiving any and all present and/or future rights to ownership and beneficial interests under the Policy(ies) and provide this information to the Trustee;

Page 3

Purchaser's Initials

FOIA Confidential Treatment Requested

PWCG253733

Exhibit 39 Page 775

(d) Seller shall obtain and provide to the Trustee the following documents:

1. Change of Ownership
2. Change of Beneficiary

(e) In order to protect the confidentiality and privacy of insureds, their names will not be disclosed to the Purchasers. Insureds will be given a code number which will be recorded and maintained in the records of the Seller and the servicing company's databases. Any insurance company documents provided to the Purchaser will have any identifying information regarding the insured redacted and replaced with this code number.

(f) Except as set forth in this Agreement, the Seller makes no representations or warranties of any kind, nature or description whatsoever and Purchaser expressly acknowledges that no representations or warranties have been made. The Seller is not liable or bound in any manner by express or implied warranties, guaranties, promises, statements or representations, not included within this Agreement, that are made or furnished by any broker, agent, employee, servant or other person purporting to represent the Seller.

### 3. DISCLOSURES TO LIFE SETTLEMENT PURCHASERS

(a) The Seller is Pacific West Capital Group, Inc., whose principal business and mailing address is 1901 Avenue of the Stars Suite 680 Los Angeles, CA 90067 and whose phone number is 310-578-6343.

(b) The suitability standards for prospective purchasers, set forth at California Corporations Code §25102(q)(1), are as follows:

(1) Sales of securities described in this subdivision are made only to qualified purchasers or other persons the issuer reasonably believes, after reasonable inquiry, to be qualified purchasers. A corporation, partnership, or other organization specifically formed for the purpose of acquiring the securities offered by the issuer in reliance upon this exemption may be a qualified purchaser only if each of the equity owners of the corporation, partnership, or other organization is a qualified purchaser. Qualified purchasers include the following:

(A) A person designated in Section 260.102.13 of Title 10 of the California Code of Regulations.

(B) A person designated in subdivision (i) or any rule of the commissioner adopted thereunder.

(C) A pension or profit-sharing trust of the issuer, a self-employed individual retirement plan, or an individual retirement account, if the investment decisions made on behalf of the trust, plan, or account are made solely by persons who are qualified purchasers.

Purchaser's Initials

FOIA Confidential Treatment Requested

PWCG253734

Exhibit 39 Page 776

(D) An organization described in Section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, each with total assets in excess of five million dollars ($5,000,000) according to its most recent audited financial statements.

(E) A natural person who is either an individual or an individual jointly with their spouse, they warrant that they (i) have a minimum net worth of one hundred fifty thousand dollars ($150,000) and have, during the immediately preceding tax year, gross income in excess of one hundred thousand dollars ($100,000) and reasonably expect gross income in excess of one hundred thousand dollars ($100,000) during the current tax year or (ii) have a minimum net worth of two hundred fifty thousand dollars ($250,000). "Net worth" shall be determined exclusive of home, home furnishings, and automobiles. Other assets included in the computation of net worth may be valued at fair market value.

Each natural person specified above, by reason of his or her business or financial experience, or the business or financial experience of his or her professional advisor, who is unaffiliated with and who is not compensated, directly or indirectly, by the Issuer of any affiliate or selling agent of the Issuer, can be reasonably assumed to have the capacity to protect his or her interests in connection with the transaction. The amount of investment of each natural person shall not exceed 10 percent of the net worth, as determined by this subdivision, of that natural person.

(F) Any other purchaser designated as qualified by rule of the commissioner.

(c) PWCG is a corporation incorporated in the State of California.

(d) PWCG is in the business of facilitating the sale of interests in life settlements.

(e) Andrew Calhoun is the President, director and sole shareholder of PWCG.

(f) Under Section 25508.5 of the California Corporations Code, a person who purchases a life settlement contract or a fractionalized or pooled interest therein may rescind or cancel the purchase at any time before seven (7) calendar days after the date the person remits the required consideration to the issuer or the issuer's agent by giving written notice of rescission or cancellation to the issuer or the issuer's agent. No specific form is required for the rescission or cancellation. The notice is effective when personally delivered, deposited in the United States mail, or deposited with a commercial courier or delivery service. If the Purchaser rescinds or cancels the purchase, the Seller shall refund all of the Purchaser's money within seven (7) calendar days after receipt of the notice of rescission or cancellation.

Page 5

Purchaser's Initials

(g) The life expectancy of any particular insured and the annual rate of return on a life settlement contract are only estimates and cannot be guaranteed. The annualized rate of return would be higher if the actual life expectancy turns out to be less than the estimated life expectancy of the insured. The annualized rate of return would be lower if the actual life expectancy turns out to be more than the estimated life expectancy of the insured.

(h) The purchase of the death benefit of one or more life insurance policies should not be considered a liquid purchase. It is impossible to predict the exact time of the insured's death. No fixed date for the payment of the death benefit to Purchaser has been or can be determined at this time. Purchaser's funds are illiquid and will not be available until after the death of the insured. Purchaser acknowledges that he/she has sufficient financial resources to bear the risk associated with the purchase.

(i) The Purchaser's annual rate of return on purchase decreases as the life of the insured continues. The Purchaser's annual rate of return on purchase may be further adversely affected by, without limitation, (i) the financial stability of the insurance companies issuing the Policies, or (ii) the payment limitations in effect from time to time set by the State Guarantee Funds of the states where the Policies were issued.

(j) Each Purchaser should consult with his or her own tax advisor regarding the tax consequences of the purchase of a life settlement interest. If the Purchaser is using retirement funds or accounts for the purchase, he should ask his or her tax advisor whether or not any adverse tax consequences might result from the use of those funds for this purchase.

(k) Purchasers should be aware that some types of group life insurance policies may contain limitations or caps in the amount of coverage that may be converted. Also, the conversion of a group policy to an individual policy may result in additional premium payments.

(l) The Trustee is responsible for making the premium payments as outlined in Section 2(b) of this Agreement. The current Trustee is Mills, Potoczak & Co., 27600 Chagrin Boulevard, Suite 200, Cleveland, Ohio 44122.

(m) A Life Settlement Disclosure Form containing specific information regarding the insurance policy(ies) in which the Purchaser may obtain an interest will be provided to the Purchaser at least five (5) business days prior to the closing of any purchase. The commitment to purchase an interest in the death benefits of a specific policy shall not be final until the Purchaser has received this information and been given the opportunity to advise the Seller if he/she wishes to decline the purchase.

(n) There are certain post-closing servicing activities that must be undertaken, but are not performed by Seller. These servicing activities include but are not limited to maintaining contact with the insured, tracking the health status of the insured, monitoring the status of disability claims by insured, converting group policies to individual plans of insurance, and filing claims for benefits and death certificates with the insurance companies. The Seller currently uses Mills Potoczak & Co. to perform the above-described activities. Mills Potoczak & Co. is located at 27600 Chagrin Blvd, Suite 200, Cleveland, OH 44122.

Purchaser's Initials

FOIA Confidential Treatment Requested

PWCG253736

Exhibit 39 Page 778

## 4. REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser represents and warrants to Seller that:

(a) Purchaser is a resident of the State of California and the address and other information set forth herein are true and correct.

(b) The Interest(s) is/are being acquired solely for the Purchaser's own account and not with a view to or for sale in connection with the distribution of the security.

(c) Other than the Seller's agent, Purchaser has not dealt with any broker or finder in connection with the transaction set forth in this Agreement.

(d) He/she is sophisticated in financial matters or has access to professional advice, has adequate means for providing for current financial needs and possible personal contingencies, is capable of evaluating the merits and risks of obtaining an Interest and also acknowledges that, once the transaction closes, the funds committed are not liquid and will not be available until the policy matures.

(e) The Purchaser has been furnished with such information by the Seller as Purchaser requires and has requested regarding the Interest and has had any questions arising from such review answered by the Seller to Purchaser's satisfaction. Purchaser acknowledges, however, that Purchaser has not and will not be furnished with any information regarding the identity of the Insured(s) and purchases this Interest(s) with the expectation that the identity of the Insured will not be known. Purchaser has full legal capacity to enter into this Agreement.

(f) Purchaser acknowledges that the Seller is willing to provide additional information regarding this transaction and the business of the Seller beyond that contained in any documentation previously provided. The Purchaser also acknowledges that he/she has also had the opportunity to evaluate the merits and risks of this transaction.

(g) Purchaser acknowledges that he/she understands the meaning and legal consequences of the above representations and warranties and that the Seller has relied on these representations and warranties in entering into this Agreement. Purchaser agrees to indemnify and hold harmless the Seller and its principals, agents, and employees from any damage or liability due to or arising out of a breach of any representation or warranty made herein by Purchaser.

(h) Purchaser authorizes the Seller to enter into any agreements or contracts which may be necessary in order to effectuate the purchase of Interests on behalf of the Purchaser.

(i) Purchaser represents that he/she has completed a Suitability Questionnaire and that he/she understands that Seller will rely upon the representations made in that Suitability Questionnaire for the purpose of determining if the Purchaser is qualified.

(j) Purchaser acknowledges that the economic benefit derived from the transaction(s) contemplated by this Agreement will result solely from the maturity of the life insurance

Purchaser's Initials

Page 7

policy(ies) upon the death of the insured(s), and will not be derived from the efforts of any person or entity employed by or associated with the Seller.

## 5. MISCELLANEOUS.

(a) **Entire Agreement.** This Agreement constitutes the entire agreement between the Seller and Purchaser. No change, modification, termination or amendment of this Agreement shall be valid unless it is in writing and signed by both the Seller and Purchaser.

(b) **Section Headings.** The section headings contained in this Agreement are for reference only and shall not in any way affect the meaning or interpretation of this Agreement.

(c) **Gender.** Pronouns shall be deemed to include masculine, feminine and neuter genders and singular or plural numbers as appropriate.

(d) **Applicable Law.** This Agreement shall be construed and enforced in accordance with, and governed by, without exception, the laws of California. A proceeding arising from or relating to this Agreement must be brought in the Superior Court of California, County of Los Angeles, to the exclusion of any other court of competent jurisdiction.

(e) **No Third Party Benefited.** This Agreement is solely for the benefit of the parties hereto, and no other person or entity shall have any right, benefit, priority or interest under this Agreement, or because of the existence of this Agreement.

(f) **Notices.** Any notice required or permitted to be given under this Agreement shall be sufficient if in writing and if sent by registered or certified mail or recognized overnight delivery service to the parties at their respective addresses set forth below or to such other address as either party may designate by notice given in accordance with this Agreement.

Seller
Pacific West Capital Group, Inc.
1901 Avenue of the Stars Suite 680
Los Angeles, CA 90067

Purchaser
_____The Bertini Revocable Trust_____
████████████████
Thousand Oaks, CA 91360

(g) **Non Waiver.** No failure on the Seller's part to exercise, and no delay in exercising, any right, power or remedy under this Agreement or under applicable law shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. All of Purchaser's rights and remedies under this Agreement or arising under applicable law are separate and cumulative and may be pursued separately, successively or concurrently, or not pursued, without affecting or limiting any other right of Purchaser.

Page 8                                                                                   Purchaser's Initials

(h) **Invalidity and Severability**. If any provisions of this Agreement are held invalid or unenforceable, such invalidity or unenforceability shall not affect the other provisions of this Agreement, and to that extent, the provisions of this Agreement are intended to be and shall be deemed severable.

(i) **Successors and Assigns**. This Agreement shall be binding upon and inure to the benefit of the heirs, legal and personal representatives, successors, and assignees of the Purchaser.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

PACIFIC WEST CAPITAL GROUP, INC.

By: _____

Date: 3/20/14

READ AND APPROVED BY
LIFE SETTLEMENT PURCHASER(S)
Date 3-14-2014

_____
Signature

**Domenico Bertini**
Printed Name

███████████
Social Security or Tax ID#

███████████
Address

**Thousand Oaks, CA 91360**
City, State, Zip

███████████
Telephone Number

███████████
Facsimile Number

READ AND APPROVED BY
LIFE SETTLEMENT PURCHASER(S)
Date 3-14-2014

_____
Signature

**Heather A. Bertini**
Printed Name

███████████
Social Security or Tax ID#

███████████
Address

**Thousand Oaks, CA 91360**
City, State, Zip

███████████
Telephone Number

███████████
Facsimile Number

Purchaser's Initials

FOIA Confidential Treatment Requested

PWCG253739

Exhibit 39 Page 781

rev. ▮           **Beneficiary List**

New York Life # 1▮6747

| | Total Designation Amount | $4,166,666.00 | Investment | Interest | 1st prem res | 2nd prem res | policy purchase | PWCG | Mills |
|---|---|---|---|---|---|---|---|---|---|
| | Amount left to be designated | $1,617,438.50 | $1,132,990.00 | $0.00 | $509,144.20 | $11,329.90 | $123,000.00 | $486,115.90 | $3,400.00 |
| William P. & Lynne B. Taylor ▮ Rancho Palos Verdes, CA 90275 | | $225,000.00 | $100,000.00 | | $0.00 | $1,000.00 | $98,600.00 | $0.00 | $400.00 |
| Theodore J. Gradman, Ph.D. 401k Plan ▮ San Mateo, CA 94401 | | $135,000.00 | $60,000.00 | | $35,000.00 | $600.00 | $24,400.00 | $0.00 | $0.00 |
| 01 The Entrust Group, Inc. FBO Cristiane V. Freire IRA ▮1033 555 12th St., Suite 250 Oakland, CA 94607 | | $45,000.00 | $20,000.00 | | $9,515.69 | $200.00 | $0.00 | $10,284.31 | $0.00 |
| 01 The Entrust Group, Inc. FBO Ross MacCarty IRA ▮7753 555 12th St., Suite 250 Oakland, CA 94607 | | $112,500.00 | $50,000.00 | | $35,000.00 | $500.00 | $0.00 | $14,450.00 | $50.00 |
| Robert J. Griffis ▮ Grass Valley, CA 95949 | | $45,000.00 | $20,000.00 | | $9,515.69 | $200.00 | $0.00 | $10,234.31 | $50.00 |
| 01 The Entrust Group, Inc. FBO Gisele Motta IRA ▮1059 555 12th St., Suite 250 Oakland, CA 94607 | | $45,000.00 | $20,000.00 | | $9,515.69 | $200.00 | $0.00 | $10,234.31 | $50.00 |
| Wayne Sabatelli ▮ San Jose, CA 95126-1638 | | $45,000.00 | $20,000.00 | | $9,515.69 | $200.00 | $0.00 | $10,159.31 | $125.00 |
| 01 The Entrust Group, Inc. FBO Jason Wuest SEP-IRA ▮68LA 555 12th St., Suite 250 Oakland, CA 94607 | | $22,500.00 | $10,000.00 | | $4,757.84 | $100.00 | $0.00 | $5,017.16 | $125.00 |

Exhibit 39 Page 782