1  MICHAEL S. CRYAN (SBN 2751022)
   michael.cryan@arentfox.com
2  ARAM ORDUBEGIAN (SBN 185142)
   aram.ordubegian@arentfox.com
3  JAKE GILBERT (SBN 293419)
   jake.gilbert@arentfox.com
4  **ARENT FOX LLP**
   555 W. 5th Street, 48th Floor
5  Los Angeles, California  90013
   Telephone: 213.629.7400
6  Facsimile:  213.629.7401

7  Attorneys for
   COOK STREET MASTER TRUST

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                  Plaintiff,<br><br>v.<br><br>PACIFIC WEST CAPITAL GROUP, INC.; ANDREW B. CALHOUN IV; PWCG TRUST; BRENDA CHRISTINE BARRY; BAK WEST, INC.; ANDREW B. CALHOUN JR.; ERIC CHRISTOPHER CANNON; CENTURY POINT, LLC; MICHAEL WAYNE DOTTA; AND CALEB AUSTIN MOODY (dba SKY STONE),<br><br>                  Defendants. | Case No.  2:15-CV-02563-FMO (FFMx)<br><br>**RESPONSE OF COOK STREET MASTER TRUST TO RECEIVER'S MOTION FOR AUTHORITY TO:**<br><br>**(A) ENGAGE PORTFOLIO MANAGEMENT AND VALUATION CONSULTANT;**<br><br>**(B) TERMINATE MILLS, POTOCZAK & COMPANY; AND**<br><br>**(C) USE PWCG TRUST RESERVE FUNDS TO COVER UNFUNDED PREMIUM PAYMENTS FOR AN ADDITIONAL FIVE MONTHS**<br><br>Date:    May 31, 2018<br>Time:    10:00am<br>Ctrm:    6D<br>Judge:   Hon. Fernando M. Olguin |

ARENT FOX LLP
ATTORNEYS AT LAW
NEW YORK

AFDOCS/16369406.1

RESPONSE OF COOK STREET MASTER
TRUST TO RECEIVER'S MOTION FOR
AUTHORITY 2:15-CV-02563-FMO (FFMX)

## I. INTRODUCTION

Cook Street Master Trust ("CSMT") is an investment trust managed by BroadRiver Asset Management, L.P. ("BroadRiver") that acquires interests in life insurance policies as a means of achieving dependable, consistent returns which are less volatile than those offered in other markets. CSMT, after being presented an investment opportunity by Pacific West Capital Group ("Pac West"), and its principal Andrew B. Calhoun IV ("Calhoun"), paid $1.5 million to Pac West in order to acquire fractional interests in life insurance policies owned by Pac West and held by PWCG Trust, for which Mills Potoczak & Company (the "Trustee") is trustee. CSMT has been funding premiums for the fractional interests owned since the acquisition, and requests the ability to continue making those payments in order to assist the Receiver in minimizing the erosion of PWCG Trust's reserves, such that the overall health of PWCG Trust's assets are maintained for its investors, including CSMT.

CSMT's interest is in continuing to fund the premium payments for the life insurance policies that it has previously acquired in order to keep them from lapsing and its investment safe. In this regard, CSMT stands willing and able to continue making similar payments supporting the Receiver in his aims of maintaining PWCG Trust's assets' viability and overall value. CSMT, as an investor in assets held by PWCG, holds an interest in both continuing the existence of the insurance policies for which it has acquired an interest, and in assisting the appointed Receiver, whose *raison d'être* is the maximization of value of the remaining assets of its estate for the assets' investors, which include CSMT.

CSMT does not oppose any of the requests made by the Receiver in his May 2, 2018 Motion for Authority to (A) Engage Portfolio Management and Valuation Consultants; (B) Terminate Mills Potoczak & Company; and (C) Use PWCG Trust Funds to Cover Unfunded Premium Payments for an Additional Five Months (the "Motion"), but instead respectfully seeks only that the Court modify Receiver's

Proposed Order (Dkt. 153-2) to enable CSMT to continue funding the premium payments it already been in order to protect its fractional interests in life insurance policies held by PWCG Trust that it previously acquired its interest in.

## 2. STATEMENT OF FACTS

The receiver has provided certain information to the Court about CSMT in his recent declarations at DE 146-1 and 153-1. CSMT has provided a declaration from its trustee to clarify certain statements made by the receiver and to advise the Court of its position. CSMT entered into an agreement, effective July 2017 with Pac West (the "Pac West Acquisition") . Declaration of Andrew Plevin ("Plevin Dec.") ¶3. Pursuant to the Agreement, among other things, CSMT purchased all of Pacific West's rights in insurance policies held by PWCG Trust that Pacific West had acquired after taking over and assuming premium payment obligations from defaulted investors, or what is known as "forfeited interests." *Id.* Those rights were for various percentage ownerships in most of the policies owned by the Trust. *Id.* Additionally, pursuant to the Agreement, CSMT obtained the right to any subsequent forfeited interests in policies. Plevin Dec. ¶5.  In November 2017, PWCG Trust notified that CSMT that CSMT would acquire additional interests as additional investors failed to make required premium payments. *Id.* As a percentage owner of policies in which it obtained interests, CSMT has taken over and assumed premium payment obligations for its proportional interests in those policies. *Id.*

During CSMT's due diligence review, PWCG Trust confirmed that it had declared policy interests "forfeited" after a standard notification process that was followed with respect to each investor in a policy. Plevin Dec. ¶9. PWCG Trust advised CSMT, and gave CSMT copies of notice letters that demonstrate a process involving an initial letter that requested a payment from each policy investor, due to the exhaustion of reserve funds, for each investor's proportional share of the necessary premium amount to keep policies in force, explaining the exhaustion of reserve funds and the investor's obligation to contribute. *Id.* PWCG Trust would

send a second letter if the investor had not paid the requested amount within a minimum of 30 days, in which it advised that failure to pay would result in the loss of the investor's interest in the policy. *Id.* Thirty days or more after the second letter, PWCG Trust would send its final request and advise that failure to pay by a fixed date at least 30 days after the date of the third letter would result in forfeiture. *Id.* Only after that fixed date would PWCG Trust declare a forfeit as to any investor who failed to remit the additional premium to the Trustee.

CSMT has paid PWCG Trust $875,467 for premiums for its proportional share of policies. Plevin Dec. ¶6. CSMT has relied on PWCG Trust to maintain accurate records regarding the premium payments made and the proportional shares held by CSMT at all time. *Id.* The total death benefit owned by CSMT through its acquisition of PWCG Trust interests is just over $32 million. Plevin Dec. ¶7. Mr. Hebrank has represented that the total face value, or net death benefit, of policies held by PWCG Trust is $126,650,578. *Id.* CSMT therefore owns approximately 25% of the net death benefit of policies held by PWCG Trust. *Id.*

PWCG Trust requested CSMT to fund unfunded premium payments for interests which had not yet been forfeited but which may be forfeited later. Plevin Dec. ¶10. Consequently, and to assist PWCG Trust in keeping policies in force, CSMT advanced a series of payments totaling $1,213,293.02 to PWCG Trust, which PWCG Trust stated would be used to make premium payments and which may later result in PWCG Trust assigning interests to CMST. *Id.*

CSMT also advanced a total of $146,642.51 to enable PWCG Trust to make certain premium payments for policies still in their contract period, meaning that formal request for additional funds from investors could not be made but the policies were nevertheless in danger of lapse. Plevin Dec. ¶11.

In total, CSMT has advanced $1,359,935.53 to PWCG Trust for the purpose of making premium payments to protect the interests of investors who, at least at the time of the advance, had failed to pay premiums when due but had not yet been

ARENT FOX LLP
ATTORNEYS AT LAW
NEW YORK

AFDOCS/16369406.1

- 4 -

RESPONSE OF COOK STREET MASTER
TRUST TO RECEIVER'S MOTION FOR
AUTHORITY 2:15-CV-02563-FMO (FFMX)

1  subject to forfeiture. Plevin Dec. ¶12.

2  CSMT is familiar with, and is prepared to assist ITM 21st as it commences
3  its engagement, to provide any information that might be helpful based on the work
4  that CSMT has done over the past 12 months in analyzing the policies, policy
5  market values, optimum premium funding levels and other details that will be
6  necessary to complete the tasks for which ITM 21st will be engaged. Plevin Dec.
7  ¶13.

8  CSMT has dedicated funds for the premiums of the approximately 25%
9  interest that it has in PWCG Trust's policies and is well-positioned to make all
10 payments in a timely fashion. Plevin Dec. ¶15. Such payments will of course reduce
11 the need for cash to be drawn from the reserve funds. *Id.* CSMT does not oppose
12 the request to use reserve funds from policies in their contract periods to pay
13 premiums due on other policies. Plevin Dec. ¶14. CSMT has previously made this
14 offer to the Receiver in an attempt to assist the Receiver's administering of the
15 assets held by PWCG Trust. Plevin Dec. ¶16.

### 3.  ARGUMENT

17 When an order is requested or made, a party need only state the action that it
18 wants the court to take or objects to, along with the grounds for the request or
19 objection. Fed. R. Civ. Proc. 46. Courts of equity have an inherent power to fashion
20 effective relief. *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980). Further,
21 district courts have that broad power of a court of equity to determine appropriate
22 action in administration and supervision of a receivership. *See SEC v. Capital*
23 *Consultants, LLC*, 397 F.3d 7333, 738 (9th Cir. 2005). Broad deference will be
24 afforded to district courts in their supervisory role, and reasonable procedures will
25 generally be upheld that "serve the purpose of orderly and efficient administration
26 of the receivership for the benefit of creditors." *CFTC v. Topworth Int'l, Ltd.*, 205
27 F.3d 1107, 1115 (9th Cir. 1999).

28 Receivers owe duties to the court and eventual owners of the receivership

estate's assets. *See Sovereign Bank v. Schwab*, 414 F.3d 450, 454 (3d Cir. 2005). That duty manifests as an obligation to protect, preserve, administer, and distribute appropriately the receivership estate's assets and must advocate, to the court, courses of action that are consistent with these duties. *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006); *SEC v. Private Equity Mgmt. Grp., Inc.*, 2009 WL 2019747 (C.D.Cal. 2009).

CSMT is requesting only a minor change in the Receiver's Proposed Order. CSMT would like to continue funding premium payments for the fractional interests in insurance policies held by PWCG Trust that it has previously funded, such that its interests are not put at risk, and further that PWCG Trust's reserves are not unnecessarily eroded. Further to the approximately $1.4 million already forwarded to PWCG Trust in premium payments, CSMT is prepared to continue funding the premiums going forward. Preventing CSMT from funding these payments would risk the value of all the life insurance policies held by PWCG Trust because according to the Receiver, PWCG Trust's reserves will within the next 12 months become insufficient to fund the policy premiums, thereby imperiling all of the value stored in the insurance policies. The Receiver's Motion concedes these points and warns "the vast majority of Policies will exhaust their reserves before they mature and that all investors will eventually be in the position of losing their investments if there is no alternative source of funding to pay the premiums." Receiver's Motion, pg. 16.

Additionally, allowing CSMT to continue funding its obligations assists the Receiver in his obligation to investigate PWCG Trust and the other involved entities with fewer time constraints generated by the rapidly eroding reserve funds. The Receiver will be better suited to perform his obligations assigned to him as an officer of the Court by being able to make a more complete survey of the assets, their valuations, and his ability to recover maximum value for the insurance policies' investors, as is his legal obligation. The Receiver requests payments for

120 days in order to propose a means to address the unfunded premiums by means of using the reserves, but with CSMT's involvement, the Receiver would be able to stretch the existing reserves further and more accurately determine a more ideal solution.

This course of action is in both CSMT's interest and in the Receiver's interest, as allowing the PWCG Trust reserves to unnecessarily erode imperils all of the insurance policies by shortening the overall amount of time that the Receiver will be able to fund them. Allowing CSMT to continue funding its share of the insurance policy premiums owed improves the likelihood of all investors in the insurance policies owed by PWCG Trust to recover their investments.

## 4.  CONCLUSION

Further to the above, CSMT respectfully requests that the Court modify Receiver's Order to allow CSMT to continue to make premium payments for the Unfunded Premium Payments for the policies which it has previously acquired as a result of the Pac West Acquisition to prevent the unnecessary erosion of PWCG Trust's reserve funds. Retaining PWCG Trust's reserve funds would assist the Receiver maintain the overall value of the PWCG Trust's assets, of which CSMT owns an interest. CSMT makes no opposition to any other facet of the Receiver's Motion, and instead stands ready to assist Receiver in administering the PWCG Trust, protecting the value of the policies contained therein, and continuing to maximize the value of the Receiver's estate. CSMT therefore requests that the Court grant Receiver's Motion, with the modification described herein.

1  Dated: May 10, 2018  **ARENT FOX LLP**

   By:/s/ Michael S. Cryan
   MICHAEL S. CRYAN
   ARAM ORDUBEGIAN
   JAKE GILBERT
   Attorneys for
   COOK STREET MASTER TRUST