ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
DAVID R. ZARO (BAR NO. 124334)
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com

ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
EDWARD G. FATES (BAR NO. 227809)
One America Plaza
600 West Broadway, 27th Floor
San Diego, California 92101-0903
Phone: (619) 233-1155
Fax: (619) 233-1158
E-Mail: tfates@allenmatkins.com

Attorneys for Receiver
THOMAS HEBRANK

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC WEST CAPITAL GROUP, INC.; ANDREW B CALHOUN IV; PWCG TRUST; BRENDA CHRISTINE BARRY; BAK WEST, INC.; ANDREW B CALHOUN JR.; ERIC CHRISTOPHER CANNON; CENTURY POINT, LLC; MICHAEL WAYNE DOTTA; and CALEB AUSTIN MOODY (dba SKY STONE),<br><br>Defendants. | Case No. 2:15-cv-02563-FMO (FFMx)<br><br>**RECEIVER'S SIXTH INTERIM REPORT AND RECOMMENDATIONS**<br><br>Ctrm.: 6D<br>Judge: Hon. Fernando M. Olguin |

Thomas C. Hebrank ("Receiver"), the Court-appointed permanent receiver for PWCG Trust pursuant to the Judgment as to Defendant PWCG Trust ("Appointment Order") (Dkt. No. 145), hereby submits this Sixth Interim Report and Recommendations. This report covers the time period from April 1, 2019, through June 30, 2019.

## I. EXECUTIVE SUMMARY

Pursuant to the powers, authority, and directives contained in the Appointment Order, the Receiver has continued his work to preserve and protect the assets of PWCG Trust, including its life insurance policies ("Policies") and cash reserves. As discussed further below, pursuant to the Court's December 7, 2018 order approving the Receiver's proposal to pool the cash reserves and death benefits, pay Policy premiums from the pooled funds, and sell or surrender the 34 Negative Value Policies ("December 7, 2018 Order"), the Receiver has pooled the cash reserves, serviced the Policies, and sold 14 Negative Value Policies for a total of $1,106,861.

The Receiver has also been in contact with several prospective lenders regarding a credit facility to provide additional funding needed to cover projected premiums for the portfolio. In light of the three recent Policy maturities and the substantial death benefits received in connection with those maturities (including the resulting increase to the pooled cash reserve for the portfolio), the Receiver has deferred further discussions regarding a credit facility for the time being and will resume discussions with potential lenders when the need for additional funding is more imminent. Finally, the Receiver, with the assistance of ITM Twentyfirst ("21st"), has continued to make all required premium payments to keep the Policies in force, and has tracked and collected death benefits from Policy maturities.

## II. SUMMARY OF RECEIVER'S WORK

The Receiver's focus during the second quarter was on completing the process of resolving the Negative Value Policies, either through sale, lapse, or surrender. This included working with 21st to market the Negative Value Policies identified in

the Receiver's proposal to potentially interested parties in the life settlements industry. To date, the Receiver completed a sale of 14 Negative Value Policies for a purchase price of $1,106,861. The death benefits associated with these Policies totaled approximately $33.7 million. The Receiver also surrendered one Negative Value Policy for its cash surrender value ($1,547).

Having marketed the Negative Value Policies to the most likely purchasers in the industry, and with large premium payments due, the Receiver decided to allow 13 Negative Value Policies with no cash surrender values to lapse, thereby reducing the drain on cash reserves associated with the Policies. The death benefits associated with these 13 Negative Value Policies totaled approximately $23 million.

With respect to the 6 remaining Negative Value Policies, once more recent medical records were obtained for these Policies and an updated life expectancy report ("LE Report") was completed, these Policies were determined to have positive value based on the death benefits and projected premium payments until maturity. Accordingly, these Policies were removed from the Negative Value Policy list and added to the general list of active Policies in the portfolio.

With respect to maturities, a total of 12 Policies have matured since the Receiver's appointment. The death benefits associated with these Policies total approximately $17,845,698, including $5.93 million from two recent maturities that the Receiver expects to receive in the next 30 days. After subtracting the Negative Value Policies that were sold and lapsed/surrendered, as well as the Policies that have matured, the portfolio now contains a total of 81 Policies with death benefits totaling approximately $162.5 million.

Throughout this period, the Receiver also worked to gather and analyze documents and records important for his accounting and analysis of receivership estate assets. It should be noted that the Receiver's accounting and document analysis will ultimately be key to establishing the allowed amount of each investor's claim and a plan for distribution of receivership assets.

## III. PENDING LITIGATION

At the time of the Receiver's appointment, PWCG Trust had been named as a defendant in four lawsuits pending in Superior Court in Los Angeles. These lawsuits had each been filed by one or more investors, either individually or as a putative class. The Receiver filed notice of the Appointment Order and the litigation stay contained therein in each case and also contacted counsel for the other parties. As a result, the litigation stay has been observed by the state court and the parties in each case. The Superior Court has held several case management conferences in an effort to determine whether the cases can proceed against the other defendants in light of the stay of all claims as to PWCG Trust. At present, each of the lawsuits have been stayed subject to review by the state courts in the coming months.

The Receiver has also been in communication with the investor plaintiffs, through their counsel, about the claims involved in the pending cases, the Receiver's potential claims against third parties, including potential claims against Mills Potoczak & Company ("MPC"), and the most cost-efficient way to pursue such claims. The Receiver and MPC have signed a tolling agreement as to all statutes of limitations and other time-based defenses to such potential claims.

## IV. TAX ISSUES

With the assistance of counsel, the Receiver has been evaluating the proper tax treatment and tax return filings for PWCG Trust for 2018 and going forward. The appointment of the Receiver over PWCG Trust and creation of the receivership estate covering its assets will likely result in significant changes to the entity's tax returns under the Internal Revenue Code and related regulations. In many receiverships of this nature, the receivership estate is treated as a "Qualified Settlement Fund" for tax purposes. For now, the Receiver has filed for an extension of PWCG Trust's 2018 tax returns such that his evaluation of these issues can be completed.

## V. COOK STREET MASTER TRUST CLAIMS

As discussed in prior filings, after the Securities and Exchange Commission filed this case, but prior to the Receiver's appointment, Defendant Pacific West Capital Group, Inc. ("Pacific West") sold its purported fractionalized interests in the Policies held by PWCG Trust to an entity called Cook Street Master Trust ("CSMT"), which is managed by BroadRiver Asset Management. CSMT also allegedly acquired Pacific West's rights with respect to future "forfeited" fractionalized interests of investors who failed to pay amounts demanded in cash calls. CSMT made certain payments to PWCG Trust. Presumably, the payments were for premiums associated with its fractionalized interests in Policies, and for premiums associated with fractionalized interests that it believed would be "forfeited" by investors in the future. The total amount paid by CSMT to PWCG Trust is believed to be approximately $2.35 million.

The Receiver and CSMT, through their respective counsel, have been in communication about the treatment of CSMT's claims against the receivership estate and a potential resolution of such claims. To date, an agreement has not been reached, but the parties continue to discuss these issues.

## VI. INVESTOR COMMUNICATIONS

The Receiver has established a dedicated web page on his website which is being used to provide case information, regular updates, and answers to frequently asked questions to investors and creditors. The Internet address for the webpage is as follows: http://www.ethreeadvisors.com/cases/pwcg/. The Receiver mailed a letter to all investors in the week following his appointment to inform them of the receivership and direct them to the website to obtain further notices and updates. The Receiver has posted the Appointment Order and other filings relating to the receivership on the webpage and will continue to update it with relevant filings and orders of the Court. Investors and creditors can sign up at the webpage to receive monthly email updates about the case. To date, a total of 855 investors have signed

up to receive such updates. To ensure receipt of future notices, investors and creditors should promptly contact the Receiver's office at pwcg@ethreeadvisors.com if their contact information changes and provide their new contact information.

## VII. SUMMARY OF RECEIPTS AND DISBURSEMENTS

The following table reflects a summary of the receipts and disbursements for the receivership estate from April 1, 2019, through June 30, 2019:

| | |
|---|---:|
| Balance as of 4/01/19 | $5,571,008 |
| Policy Maturities | $5,508,404 |
| Misc. Income | $6,438 |
| Policy Sales | $258,408[1] |
| Policy Premium Pmts & Business Asset Expenses | ($1,679,249) |
| Disbursements to Receiver & Professionals | ($55,623) |
| Tax Payments | ($59,700) |
| Ending Balance as of 6/30/19 | $9,729,685 |

In addition, the Standardized Fund Accounting Report for the receivership estate for the time period April 1, 2019, through June 30, 2019, is attached hereto as Exhibit A.

## VIII. RECOMMENDATIONS

The Receiver's efforts to investigate and analyze assets, gather records, and analyze potential claims against third parties are ongoing. The Receiver and his professionals make the following recommendations.

### A. Document Recovery Efforts

The Receiver has obtained records from MPC, Pacific West, Calhoun, BroadRiver, and financial institutions where PWCG Trust maintained accounts. As

---

[1] An additional $850,000 was received during the first quarter of 2019, bringing the total recovery from Policy sales to $1,106,861.

noted above, the Receiver has issued several subpoenas and will issue additional subpoenas as necessary to obtain relevant documents, assets, and information. It may also be necessary to take the depositions of certain individuals to obtain critical information.

### B. Receivership Asset Recovery Efforts and Investigation

The Receiver will continue efforts to locate any presently unaccounted for receivership assets that may exist and to pursue any improper transfers to third parties. The Receiver will take appropriate steps to secure such assets and preserve their value.

### C. Accounting

The Receiver will work to complete his accounting to establish the sources and uses of funds by PWCG Trust, determine the proper amount of investor and creditor claims, and identify potential improper transfers to third parties.

### D. Provide Reports to the Court on a Quarterly Basis

The Receiver will continue to provide reports to the Court on a quarterly basis, as well as seeking Court approval of fee and costs on a quarterly basis.

### E. Claims Review and Distribution Plan

As the receivership progresses, the Receiver will formulate and seek approval of procedures for receiving and verifying investor and creditor claims, as well as the equitable and efficient manner of distributing assets to those with valid claims. At the appropriate time, the Receiver will seek Court approval of procedures for determining claims and a plan of distribution.

Dated: August 28, 2019

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By: */s/ Edward G. Fates*
EDWARD G. FATES
Attorneys for Receiver
THOMAS HEBRANK

# EXHIBIT A

Thomas C. Hebrank, Receiver
E3 Advisors
401 West A Street, Suite 1830
San Diego, CA 92101
(619) 567-7223

# STANDARDIZED FUND ACCOUNTING REPORT

CIVIL - RECEIVERSHIP FUND

SECURITIES AND EXCHANGE COMMISSION,
Plaintiff,
v.
PACIFIC WEST CAPITAL GROUP, INC.; ANDREW B CALHOUN IV; PWCG TRUST; et al, Defendants

Case No. 2:15-cv-02563 FMO (FFMx)

REPORTING PERIOD 04/01/19 TO 06/30/19

STANDARDIZED FUND ACCOUNTING REPORT for WCM777 - Cash Basis
Case No. 2:15-cv-02563-FMO (FFMx)
Reporting Period 04/01/19 to 06/30/19

| FUND ACCOUNTING (See instructions): | | Detail | Subtotal | Grand Total |
|---|---|---:|---:|---:|
| Line 1 | Beginning Balance (As of 04/01/19): | 5,751,008 | | 5,751,008 |
| | *Increases in Fund Balance:* | | | |
| Line 2 | Business Income | - | | - |
| Line 3 | Policy Maturities | 5,508,404 | | 5,508,404 |
| Line 4 | Interest/Dividend Income | 6,438 | | 6,438 |
| Line 5 | Business Asset Liquidation | 258,408 | | 258,408 |
| Line 6 | Personal Asset Liquidation | - | | - |
| Line 7 | Third-Party Litigation Income | - | | - |
| Line 8 | Misc - Insurance & Prop Tax Refunds | - | | - |
| | **Total Funds Available (Lines 1 - 8):** | 11,524,258 | | 11,524,258 |
| | *Decreases in Fund Balance:* | | | |
| Line 9 | Disbursements to Investors | - | | - |
| Line 10 | Disbursements to Receivership Operations | | | |
| Line 10a | Disbursement to Receiver or Other Professionals | (55,623) | | (55,623) |
| Line 10b | Business Asset Expenses | (1,679,250) | | (1,679,250) |
| Line 10c | Personal Asset Expenses | - | | - |
| Line 10d | Investment Expenses | - | | - |
| Line 10e | Third-Party Litigation Expenses | - | | - |
| | 1. Attorney Fees | - | | |
| | 2. Litigation Expenses | - | | |
| | **Total Third-Party Litigation Expenses** | - | | - |
| Line 10f | Tax Administrator Fees and Bonds | - | | - |
| Line 10g | Federal and State Tax Payments | (59,700) | | (59,700) |
| | **Total Disbursements for Receivership Operations** | | | (1,794,573) |
| Line 11 | Disbursements for Distribution Expenses Paid by the Fund: | | | |
| Line 11a | Distribution Plan Development Expenses: | | | |
| | 1. Fees: | | | |
| | Fund Administrator.................................. | - | | - |
| | Independent Distribution Consultant (IDC).. | - | | - |
| | Distribution Agent................................... | - | | - |
| | Consultants............................................. | - | | - |
| | Legal Advisors......................................... | - | | - |
| | Tax Advisors........................................... | - | | - |
| | 2. Administrative Expenses | - | | - |
| | 3. Miscellaneous | - | | - |
| | **Total Plan Developmental Expenses** | | | - |
| Line 11b | Distribution Plan Implementation Expenses: | | | |
| | 1. Fees: | | | |
| | Fund Administrator.................................. | - | | - |
| | IDC........................................................ | - | | - |
| | Distribution Agent................................... | - | | - |
| | Consultants............................................. | - | | - |
| | Legal Advisors......................................... | - | | - |
| | Tax Advisors........................................... | - | | - |
| | 2. Administrative Expenses | - | | - |
| | 3. Investor Identification: | | | |
| | Notice/Publishing Approved Plan.............. | - | | - |
| | Claimant Identification............................ | - | | - |
| | Claims Processing................................... | - | | - |
| | Web Site Maintenance/Call Center............ | - | | - |
| | 4. Fund Administrator Bond | - | | - |
| | 5. Miscellaneous | - | | - |
| | 6. Federal Account for Investor Restitution (FAIR) Reports Expenses | - | | - |
| | **Total Plan Implementation Expenses** | | | - |
| | **Total Disbursements for Distribution Expenses Paid by the Fund** | | | - |
| Line 12 | Disbursements to Court/Other: | | | |
| Line 12a | Investment Expenses/Court Registry Investment System (CRIS) Fees | - | | - |
| Line 12b | Federal Tax Payments | - | | - |
| | **Total Disbursement to Court/Other:** | | | - |
| | **Total Funds Disbursed (Lines 9 - 11):** | | | (1,794,573) |
| Line 13 | Ending Balance (As of 06/30/2019): | | | 9,729,685 |

Exhibit A, Page 10

STANDARDIZED FUND ACCOUNTING REPORT for PMCO Trust - Cash Basis
Case No. 2:15-cv-02563-DDP-FMO (FFMx)
Reporting Period 04/01/19 to 06/30/19

| | | Detail | Subtotal | Grand Total |
|---|---|---:|---:|---:|
| Line 14 | Ending Balance of Fund - Net Assets: | | | |
| Line 14a | Cash & Cash Equivalents | | | 9,729,685 |
| Line 14b | Investments | | | - |
| Line 14c | Other Assets or Uncleared Funds | | | - |
| | Total Ending Balance of Fund - Net Assets | | | 9,729,685 |
| **OTHER SUPPLEMENTAL INFORMATION:** | | | | |
| | Report of Items NOT to be Paid by the Fund: | | | |
| Line 15 | Disbursement for Plan Administration Expenses Not Paid by the Fund: | | | |
| Line 15a | Plan Development Expenses Not Paid by the Fund: | | | |
| | 1. Fees: | | | |
| | Fund Administrator | - | | - |
| | IDC | - | | - |
| | Distribution Agent | - | | - |
| | Consultants | - | | - |
| | Legal Advisors | - | | - |
| | Tax Advisors | - | | - |
| | 2. Administrative Expenses | - | | - |
| | 3. Miscellaneous | - | | - |
| | Total Plan Developmental Expenses Not Paid by the Fund | | | - |
| Line 15b | Plan Implementation Expenses Not Paid by the Fund | | | |
| | 1. Fees: | | | |
| | Fund Administrator | - | | - |
| | IDC | - | | - |
| | Distribution Agent | - | | - |
| | Consultants | - | | - |
| | Legal Advisors | - | | - |
| | Tax Advisors | - | | - |
| | 2. Administrative Expenses | - | | - |
| | 3. Investor Identification | | | |
| | Notice/Publishing Approved Plan | - | | - |
| | Claimant Identification | - | | - |
| | Claims Processing | - | | - |
| | Web Site Maintenance/Call Center | - | | - |
| | 4. Fund Administrator Bond | - | | - |
| | 5. Miscellaneous | - | | - |
| | 6. FAIR Reporting Expenses | - | | - |
| | Total Plan Implementation Expenses Not Paid by the Fund | | | - |
| Line 15c | Tax Administrator Fees & Bonds Not Paid by the Fund | | | - |
| | Total Disbursements for Plan Administration Expenses Not Paid by the Fund | | | - |
| Line 16 | Disbursements to Court/Other Not Paid by the Fund: | | | |
| Line 16a | Investment Expenses/CRIS Fees | - | | - |
| Line 16b | Federal Tax Payments | - | | - |
| | Total Disbursement to Court/Other Not Paid by the Fund: | | | - |
| Line 17 | DC & State Tax Payments | - | | - |
| Line 18 | No. of Claims: | | | |
| Line 18a | # of Claims Received This Reporting Period | | | 0 |
| Line 18b | # of Claims Received Since Inception of Fund | | | 0 |
| Line 19 | No. of Claimants/Investors: | | | |
| Line 19a | # of Claimants/Investors Paid this Reporting Period | | | 0 |
| Line 19b | # of Claimants/Investors Paid Since Inception of Fund | | | 0 |

Receiver:
By: _/s/ Thomas C. Hebrank_
Thomas C. Hebrank
Court-Appointed Receiver

Date: 8/26/19

Exhibit A, Page 11